Bruce Wagman (SBN 159987)
BWagman@rshc-law.com
Phone: (415) 275-8540
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery St. 16th Floor
San Francisco, CA 94104

Attorneys for Defendant-Intervenors
The Humane Society of the United States,
Animal Legal Defense Fund, Animal Equality,
The Humane League, Farm Sanctuary,
Compassion in World Farming USA, Compassion
Over Killing

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NATIONAL PORK PRODUCERS COUNCIL & AMERICAN FARM BUREAU FEDERATION,

Plaintiff,

v.

KAREN ROSS, in her official capacity as Secretary of the California Department of Food & Agriculture, Sonia ANGELL, in her official capacity as Director of the California Department of Public Health, XAVIER BECERRA, in his official capacity as Attorney General of California

Defendants.

3:19-cv-02324-W-AHG

**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**

The Honorable Thomas J. Whelan
Date: March 23, 2020
Location: Courtroom 3C
[NO ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(d)(1)]

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 2

II. STATEMENT OF FACTS .......... 4

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 6

A. Proposition 12 does not directly regulate interstate commerce .......... 7

B. Proposition 12 serves a legitimate purpose and imposes no excessive burdens on interstate commerce .......... 10

1. Prop 12 does nto impose a substantial burden on interstate commerce .......... 11

2. California has a subsantial interest in Prop 12 .......... 13

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935) .......... 9

*Barnes v. Glen Theatre*, 501 U.S. 560 (1991) .......... 15

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573 (1986) .......... 6

*Chinatown Neighborhood Ass'n v. Brown*, 2013 WL 60919 (N.D. Cal. Jan. 2, 2013), *aff'd*, 539 F.App'x 761 (9th Cir. 2013) .......... 15, 16

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (2003) .......... 14

*Cotta v. City and Cty. of San Francisco*, 157 Cal. App. 4th 1550 (2007) .......... 15

*Cresenzi Bird Importers, Inc. v. State of New York*, 658 F. Supp. 1441 (S.D. N.Y. 1987) .......... 15

*DeHart v. Town of Austin, Ind.*, 39 F.3d 718 (7th Cir. 1994) .......... 14

*Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169 (10th Cir. 2015) .......... 8

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) .......... 11

*Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326 (5th Cir.2007) .......... 10

*Gregg v. Hawaii Dep't of Pub. Safety*, 870 F.3d 883 (9th Cir. 2017) .......... 6

*Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178 (1st Cir. 1999) .......... 10

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) .......... 5

*Missouri v. California*, 139 S. Ct. 859 (2019) .......... 5

*Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012) .......... 7, 11

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104 (2d Cir. 2001) .......... 12

*NCAA v. Miller*, 10 F.3d 633 (9th Cir. 1993) .......... 7

*North Am. Meat Inst. v. Becerra*, No. 2:19-cv-08569-CAS-FFM (C.D. Cal. 2019) .......... 2, 5, 9, 12

*Oregon Waste Systems, Inc. v. Dep't of Envntl. Quality of Oregon*, 511 U.S. 93 (1994) .......... 6, 10

*Pac. Merchant Shipping Ass'n v. Voss*, 12 Cal. 4th 503 (1995) .......... 10

*Pac. Nw. Venison Producers v. Smitch*,
20 F.3d 1008 (9th Cir. 1994) .................... 6, 13
*Pharm. Research & Mfrs. of Am. v. Walsh*,
538 U.S. 644 (2003).................... 8, 10, 13
*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970).................... 7, 10, 11, 13
*Prevention of Cruelty to Animals v. Bravo Ent., Inc.*,
237 A.2d 342 (Pa. 1968).................... 14
*Rocky Mountain and in Minnesota v. Clover Leaf Creamery Co.*,
449 U.S. 456 (1981).................... 9
*Rocky Mountain Farmers Union v. Corey*,
913 F.3d 940 (9th Cir. 2019) .................... 8
*S.D. Meyers, Inc., v. City and Cnty. of San Francisco*,
253 F.3d 461 (9th Cir. 2001) .................... 7
*SDDS, Inc. v. South Dakota*,
47 F.3d 263 (8th Cir. 1995) .................... 10
*Spoklie v. Montana*,
411 F.3d 1051 (9th Cir. 2005) .................... 13
*United States v. Stevens*,
559 U.S. 460 (2010).................... 15

**Statutory Authorities**

Cal. Health & Safety Code § 25982 .................... 16
Cal. Health & Safety Code § 25990 .................... 4
Cal. Health & Safety Code § 25990(b)(1).................... 7, 10
Cal. Health & Safety Code §§ 25990, 25991(e).................... 5, 6
Cal. Health & Safety Code § 25991(e)(1) .................... 2
Cal. Penal Code § 598a.................... 16

**Rules and Regulations**

Fed. R. Civ. P. 12(c) .................... 1, 3

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on March 23, 2020, or as soon thereafter as the matter may be heard before the Honorable Thomas J. Whelan in Courtroom 3C of the United States Courthouse located at 221 West Broadway, San Diego, CA, 92101, Defendant-Intervenors The Humane Society of the United States, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming USA, and Compassion Over Killing will move this court, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for an order dismissing Plaintiffs' complaint with prejudice.[1] The grounds for this motion are: (1) Plaintiffs fail to state a claim for impermissible extraterritorial regulation under the dormant Commerce Clause, and (2) Plaintiffs fail to state a claim for excessive burden on interstate commerce in relation to putative local benefit under the dormant Commerce Clause.

[1] Defendant-Intervenors understand that the Court generally does not hold oral argument for motions, and are not requesting one. Rather, Defendant-Intervenors are simply providing the date that would be applicable if the Court desires to hold oral argument.

# MEMORANDUM OF POINTS AND AUTHORITES

## I. INTRODUCTION

This is the archetypal "copycat" lawsuit attempting a second bite at the judicial apple. On October 4, 2019, the North American Meat Institute (NAMI) filed an action in the Central District of California, challenging the exact same law, based on the exact same constitutional provisions. In a 24-page order relying on extensive Ninth Circuit and Supreme Court precedent, Judge Snyder rejected every argument by NAMI, finding it "fail[ed] to raise any questions on the merits of its three commerce clause claims."[2] *North Am. Meat Inst. v. Becerra*, No. 2:19-cv-08569-CAS-FFM (C.D. Cal. 2019) (Dkt. #47). That order is now before the Ninth Circuit. The complaint filed before this Court just two days after Judge Snyder's ruling is a transparent attempt to get a different court to issue a different ruling on the same issues.[3] Nothing in the complaint or the attached declarations changes the legal analysis.

Plaintiffs seek to overturn a voter-approved law—Proposition 12—that simply builds upon California's lengthy history of prohibiting the production and sale in the State of products that Californians deem cruel, an area of regulation well within states' historic police powers. While Plaintiffs attempt to cast Proposition 12 as a radical departure from so-called standard industry practices and permissible state regulation, the reality is quite different. Indeed, Proposition 12 merely updates the humane legislation framework first established years ago with Proposition 2's ban on the production of animal products resulting from cruel

---

[2] Proposition 12's provisions recently became effective as applied to the sales of veal products, but they are not yet effective with respect to pork products—the focus of Plaintiffs in this case—and will not be until 2022. Cal. Health & Safety Code § 25991(e)(1)-(3).

[3] Plaintiffs actually raise one *less* – but no additional – claims than those raised in the Central District litigation.

confinement and AB 1437's related ban on the sale of eggs resulting from cruel confinement. Several other states have similar laws.

California also has enacted a number of other restrictions on the production and sale of products from cruelly treated animals, such as the State's ban on the production and sale of products from force-fed birds, and from sharks whose fins are removed while they are still alive. All of these laws have been challenged under the Commerce Clause, and all have been validated by the courts time and time again. Thus, this case is simply the latest in a long line of misconceived courtroom resistance by the agricultural industry.

Plaintiffs' complaint is rife with assumptions and speculation about the alleged negative effects of Proposition 12, which (even if accepted as true) improperly focus on incidental impacts to specific businesses operating in the interstate market, and fail to identify any actual impacts on the interstate market—which are the only harms relevant to the claims here. Plaintiffs' failure to plead an unconstitutional—not merely incidental and temporary—burden to the market as a whole is fatal to their claims. Proposition 12 is designed to further California's lengthy and time-tested history of preventing animal cruelty and excluding cruel products from its marketplace. The law evenhandedly regulates the production and sale of certain pork products within California's borders without directly regulating or discriminating against out-of-state producers.[4] Furthermore, any incidental burdens on interstate commerce resulting from Proposition 12 are not excessive in relation to the local benefits. Pursuant to the standards of Rule 12(c) of the Federal Rules of Civil Procedure, Plaintiffs fail to state a claim and the case should be dismissed with prejudice.

---

[4] Proposition 12 also covers sales of certain eggs and veal products not at issue here.

## II. STATEMENT OF FACTS

Proposition 12 ("Prop 12"), a ballot initiative prohibiting business owners or operators *in California* from knowingly engaging in the sale of certain egg, veal, and pork products derived from animals "confined in a cruel manner" (as further defined by the statute), builds upon California's rich history of animal protection. Cal. Health & Safety Code § 25990. Specifically, and as described more fully below, Prop 12 amended a previously established farm animal production and sales scheme in California to address the State's role in some of the most extreme and cruel forms of farm animal confinement.

Prior to passage of Prop 12, California had taken the first steps toward excluding cruel products from its marketplace through the enactment of two laws—Proposition 2 ("Prop 2") and AB 1437—that addressed production and sales of eggs produced in a cruel manner. Prop 2, enacted by voters in 2008, generally required covered animals in California to be able to lie down, stand up, fully extend their limbs, and turn around freely. *Id.* § 25991. In 2010, California's legislature passed AB 1437 to require that all eggs sold in the state come from Prop 2-compliant conditions—wherever the eggs were produced. *Id.* § 25996. As the Act's official findings explain, the Legislature passed AB 1437 "to protect California consumers from the deleterious health, safety, and welfare effects of the sale and consumption of eggs derived from egg-laying hens that are exposed to significant stress and may result in increased exposure to disease and pathogens including salmonella." *Id.* § 25995(e). The overall policy of Prop 2 and AB 1437 reflects California's interest in addressing the local responsibility for farm animal cruelty, in terms of both in-state production practices and local market activity that permit or facilitate the activity. Subsequent to California's legislative action in this space, several other states have followed suit, including Massachusetts, Mass. Gen. Laws, Ch. 129 App., § 1-1 *et seq*.; Oregon, 2019 Or. Laws, Ch. 686 (SB 1019); and Washington, 2019 Wash. Rev. Code, Ch. 276 (HB 2049).

Prop 2 and AB 1437 withstood multiple legal challenges. Most recently, a coalition of states led by the State of Missouri challenged AB 1437 on several grounds—including the dormant Commerce Clause. Although the challenge was dismissed for lack of standing, the Ninth Circuit clearly stated that "the Shell Egg Laws are not discriminatory." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 655 (9th Cir. 2017), *cert denied sub nom., Missouri ex rel. v. Becerra*, 137 S. Ct. 2188 (2017). A similar coalition of states also tried to invoke the Supreme Court's original jurisdiction to review a dormant Commerce Clause claim against, among other laws, AB 1437—and again failed. *Missouri v. California*, 139 S. Ct. 859 (2019).

In November 2018, voters overwhelmingly enacted Prop 12. Prop 12 builds upon the confinement standards for farmed animal products produced in California set by Prop 2 by clearly mandating cage-free housing systems for laying hens, veal calves, and breeding pigs. Prop 12 provides the industry with a slow phase-in period to reach compliance. Cal. Health & Safety Code §§ 25990, 25991(e). In addition, like AB 1437, it contains a sales provision which requires—as relevant here—California business owners and operators to not knowingly engage in the sale *within the state* of any "[w]hole pork meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of immediate offspring of a covered animal who was confined in a cruel manner." *Id.* § 25990(b)(1)-(2). "Confined in a cruel manner" is defined to mean not only the behavioral standards of Prop 2, but also confinement with less than 24 square feet of usable floorspace per pig after December 31, 2021. *Id.* § 25991(e)(1)-(3).

In October 2019, the North American Meat Institute ("NAMI") filed a complaint in the Central District of California, challenging Prop 12 on behalf of pork and veal producers on Commerce Clause grounds and moving for a preliminary injunction. *North Am. Meat Inst.*, No. 2:19-cv-08569-CAS-FFM. On

November 22, 2019, the court denied the preliminary injunction request, finding that NAMI had "fail[ed] to raise any questions on the merits of its three commerce clause claims." *Id.* at Dkt. #43. The Ninth Circuit is currently considering an appeal of that order (Appeal Docket No. 19-56408), as briefing on motions to dismiss continues in the district court.

## III. LEGAL STANDARD

"Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii Dep't of Pub. Safety,* 870 F.3d 883, 887 (9th Cir. 2017) (internal citations and quotations omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.*

## IV. ARGUMENT

Plaintiffs have not raised a valid dormant Commerce Clause claim. Prop 12 does not violate the dormant Commerce Clause because it does not directly regulate or discriminate against interstate commerce, it does not favor in-state economic interests over out-of-state interests, the State's interests in enacting the law are legitimate, and any burden on interstate commerce does not clearly exceed the local benefits. *See Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994) (holding that an import ban and a ban on private possession of certain wildlife did not discriminate against interstate commerce because such a law "adds nothing to the prohibitions that apply equally to the in-state and out-of-state interests"). The test for whether a law runs afoul of the dormant Commerce Clause has two parts. First, the court must determine if the law at issue "directly regulates or discriminates against interstate commerce" or if "its effect is to favor in-state economic interests over out-of-state interests." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 579 (1986); *Oregon Waste Systems, Inc. v. Dep't of Envntl. Quality of Oregon*, 511 U.S. 93, 99 (1994)

(discrimination "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter"); *S.D. Meyers, Inc., v. City and Cnty. of San Francisco*, 253 F.3d 461, 466 (9th Cir. 2001). If the law regulates in-state and out-of-state activities equally, and only indirectly affects interstate commerce, the Court must then examine whether the State's interest is legitimate and whether the burden on interstate commerce "clearly exceeds the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Prop 12 does not directly regulate interstate commerce, contrary to Plaintiffs' allegations. (Neither does Prop 12 favor in-state economic interests or discriminate against interstate commerce, though Plaintiffs have not filed a claim alleging that it does.) Thus, it does not constitute impermissible extraterritorial regulation. Furthermore, Prop 12 is supported by a legitimate state purpose and imposes no undue burden on interstate commerce. Prop 12 is therefore valid under the dormant Commerce Clause.

**A. Proposition 12 does not directly regulate interstate commerce.**

Prop 12 affects only activities and transactions within California, and therefore does not "directly regulate" interstate commerce. A statute is not "invalid merely because it affects in some way the flow of commerce between the States." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (internal citation omitted). Rather, a statute is invalid only where it "directly regulates interstate commerce." *NCAA v. Miller*, 10 F.3d 633, 638 (9th Cir. 1993). Prop 12's sales ban expressly prohibits only the sale of certain products *in California*. Cal. Health & Safety Code § 25990(b)(1)-(2). The law is not written to regulate transactions outside of the State's borders. *See id.*[5]

[5] Copying a peculiar argument made by the plaintiffs in the Central District litigation, Plaintiffs in this case make a passing argument that Prop 12's sales ban violates "principles of interstate federalism" of the Constitution (Complaint at ¶¶ 32, 458, 461), but have not "identified which constitutional provisions or doctrine

Plaintiffs claim that Prop 12 directly regulates out-of-state farming practices by requiring out-of-state producers to adhere to Prop 12 if they wish to sell covered products in the state. They are mistaken. That Prop 12 is concerned with the treatment of animals on farms is undisputed. But the fact that Prop 12 may have some incidental effects on how sellers who choose to sell to California buyers produce their goods is not "necessarily extraterritorial." *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 952 (9th Cir. 2019) (finding no extraterritoriality and noting the "well worn path of precedent" distinguishing "impermissible statutes that 'regulate out-of-state parties directly' from those that 'regulate[] contractual relationships in which at least one party is located in [the regulating state]") (internal citation omitted).

Courts have declined to find Commerce Clause violations with respect to laws that do not, by their "express terms" or "inevitable effect[s]," dictate the terms of transactions that occur in other States. *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003); *see also, e.g.*, *Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1174 (10th Cir. 2015) (rejecting application of the line of cases concerning only "'price control or price affirmation statutes' that involve 'tying the price of . . . in-state products to out-of-state prices'" to statutes that do no such thing (quoting *Pharm. Research*, 538 U.S. at 669)). Prop 12 does nothing like that. Any and all producers or would-be producers across the country can participate in the California market by producing Prop 12-compliant products and, thus, Prop 12 does not "place [California] in a position of economic isolation" and

---

outside the Commerce Clause they believe govern their structural federalism claims, if any do." *Rocky Mountain Farmers Union*, 913 F.3d at 953. As in *Rocky Mountain*, this Court need not linger on this issue, as such a claim is "contingent upon a finding that the [regulating state's] program regulates and attempts to control conduct that occurs in other states," and such extraterritorial regulation is not present here. *Id.* (internal citation omitted).

therefore does not violate the Commerce Clause. *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 527 (1935).

Like the statutes at issue in *Rocky Mountain* and in *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981) (relied upon by the *Rocky Mountain* court), Prop 12 permissibly regulates in-state conduct and requires only that producers in other states—who choose to participate in the California market—comply with the State's requirement that their products not come from cruelly confined animals. Further, in all material respects, Prop 12 is indistinguishable from the law at issue in *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948-49 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 398 (2014). As in the case at hand, *Association des Eleveurs* involved a ban on the sale of certain farm products (liver products from force-fed animals), whether produced in or out of California, and the law was challenged on grounds that it violated the dormant Commerce Clause. *Id.* at 942, 947. The Ninth Circuit specifically determined that the foie gras law "does not directly regulate interstate commerce" and is not aimed at out-of-state producers because it "precludes sales within California of products produced by force feeding birds regardless of where the force feeding occurred." *Id.* at 948-49. So, too, here. *See North Am. Meat Inst.*, No. 2:19-cv-08569-CAS-FFM (noting in rejecting a motion for preliminary injunction of Prop 12 that *Ass'n des Eleveurs* "is, in every material respect, on all fours" with the similar dormant Commerce Clause challenge in that case and also noting that because Prop 12 "only applies to 'in-state conduct' . . . not conduct that takes places 'wholly outside California" it is a "perfectly lawful exercise" of state sovereignty) (internal citation omitted).

Plaintiffs do not directly allege that Prop12 discriminates against interstate commerce; nevertheless, to the extent the complaint could be construed to suggest discriminatory impact or intent, such implications are easily disposed of. Courts have identified three general ways of discriminating against interstate commerce: a statute may facially discriminate against interstate commerce, may be facially

neutral but have a discriminatory purpose, or be facially neutral but have a discriminatory effect. *SDDS, Inc. v. South Dakota*, 47 F.3d 263, 267 (8th Cir. 1995); *Pac. Merchant Shipping Ass'n v. Voss*, 12 Cal. 4th 503, 517 (1995). Prop 12, however, contains no language that gives California producers any advantage over their out-of-state counterparts. The law straightforwardly and evenhandedly bans the sale of certain products whether or not the seller is an in-state or out-of-state entity. Cal. Health & Safety Code § 25990(b)(1)-(4). Because all competitors are treated exactly the same by Prop 12 "there is no cause for constitutional concern." *Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 188 (1st Cir. 1999); *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry,* 476 F.3d 326, 335 (5th Cir.2007) (holding that a statute that "treats both intrastate and interstate trade of horsemeat equally by way of a blanket prohibition" cannot be "considered economic protectionism").[6]

**B. Proposition 12 serves a legitimate purpose and imposes no excessive burdens on interstate commerce.**

Because Prop 12 supports a legitimate purpose, and because it does not impose clearly excessive burdens on interstate commerce, the law is permissible under the Commerce Clause. Under Ninth Circuit precedent applying *Pike*, a reviewing court should engage in a two-step analysis. "A plaintiff must first show that the statute imposes a substantial burden before the court will determine whether the benefits of the challenged laws are illusory." *Pharm. Research*, 768 F.3d at 1044 (citing *Ass'n des Eleveurs*, 729 F.3d at 951-52). Only upon such a showing should

[6] And, indeed, a discriminatory effect claim would be a non-starter because discrimination claims fundamentally involve comparing a law's impact on in-state competitors with that on out-of-state competitors, and Plaintiffs themselves admit that there is little pork production in California. Complaint ¶¶ 16-17. *Or. Waste Sys., Inc. v. Dep't of Envt'l Quality*, 511 U.S. 93, 99 (1994) ("[D]iscrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."). (internal quotation marks omitted.)

the Court proceed to examine the in-state benefits. In this case, the Court need not even get to step two.

**1. Prop 12 does not impose a substantial burden on interstate commerce.**

The burdens Prop 12 imposes on interstate commerce are minimal, at best, and are not "clearly excessive in relation" to the important local benefits realized as a result of the law. *See Pik*e, 397 U.S. at 142. Indeed, when a law is not discriminatory—and Plaintiffs do not claim that Prop 12 is—its burden on interstate commerce will very rarely "clearly exceed" its local benefits. *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148. Prop 12, like virtually all government regulations, may require Plaintiffs' members to expend some additional resources to comply with the law, if they choose to sell their products in California (which is entirely their choice to make). Plaintiffs' members are free to sell products from cruelly confined animals outside of California. And in California, they may sell as many pork and veal products as they care to. The only thing they may not do in California is sell animal products resulting from cruel confinement.

Importantly, the economic burdens Plaintiffs allege are not of the type that are relevant for *Pike* analysis. Like most Commerce Clause challengers using the federal courts to express their displeasure with state regulation, Plaintiffs focus on impacts to specific companies in the form of allegedly extensive and costly changes to their practices in housing sows and loss of certain business relationships. Complaint ¶ 58. But as the federal courts have repeated time and again, "the [Commerce] Clause [only] protects the interstate *market*, not particular interstate firms, from prohibitive or burdensome regulations." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127-28 (1978) (emphasis added); *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1154 ("[T]here is not a significant burden on interstate commerce merely because a non-discriminatory regulation precludes a preferred, more profitable method of operating in a retail market."). Facilities adjustments such as sow housing that certain of Plaintiffs' members may choose to

make in order to comply with Prop 12 simply do not constitute the type of burden relevant to Commerce Clause analysis. Ultimately, the Commerce Clause is not concerned about profits. *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 111 (2d Cir. 2001). As the Central District recently found in the similar case and in which plaintiffs relied upon similar anticipated costs to producers in complying with Prop 12, "these anticipated effects do not demonstrate that Proposition 12 will interfere with the flow of veal or pork products into California inasmuch as the demonstrate [plaintiff's] disappointment that Proposition 12 'precludes a preferred, more profitable method of operating in a retail market.'" *See North Am. Meat Inst.*, No. 2:19-cv-08569-CAS-FFM (Dkt. #43) (internal citation omitted). The number of courts rejecting this kind of Commerce Clause challenge is legion.

Not only do Plaintiffs fail to focus on harms to the interstate market, but their allegations as to impacts on profits are entirely speculative. This is particularly clear in light of Plaintiffs' failure to address other costs of operation in addition to type of animal housing. They also fail to juxtapose the alleged costs of complying with Prop 12 with the potential benefits. Such benefits might include, for example, the possibility of long-term increased profit margins from taking advantage of a growing and unmet demand for humane-conscious products in national and international markets. Moreover, out-of-state producers (who can continue to produce and sell both Prop 12-compliant and non-compliant products in interstate commerce), may even have a market advantage over in-state producers (who are required by other portions of Prop 12 to convert all of their systems to more humane housing).[7]

---

[7] Plaintiffs contend that difficulties in traceability would require producers who would like to sell into California to convert their entire production line to be Prop 12-compliant. However, these allegations seem mainly based upon unsubstantiated assumptions that end of chain suppliers who sell pork into California "will likely force their pork suppliers to produce all products in compliance with California's specifications *or carefully segregate products*." Complaint ¶ 299 (emphasis added). Even if this were true, this is a matter between producers and suppliers rather than a feature of Prop 12, and,

Furthermore, as in *Pharmaceutical Research*, Plaintiffs fail to sufficiently allege that Prop 12 "will interrupt, or even decrease the 'flow of goods'" beyond speculative concerns. 768 F.3d at 1045 (citing *Ass'n des Eleveurs*, 729 F.3d at 952). To the contrary, by converting facilities in order to sell into the California market, interstate firms may help to increase the flow of goods throughout the interstate market, as they would be able to participate in the broader national and international market for humanely raised meat products and would not be excluded from any such markets based on improving the welfare of their animals. Thus, as in *Pharmaceutical Research*, Plaintiffs have failed to show that Prop 12 "substantially burdens interstate commerce." 768 F.3d at 1045 (citing *Ass'n des Eleveurs*, 729 F.3d at 952).

Because Prop 12 clearly does not impose a substantial burden on interstate commerce, this Court need go no further in the *Pike* analysis and this case therefore is ripe for Rule 12(c) dismissal. *See Spoklie v. Montana*, 411 F.3d 1051, 1059 (9th Cir. 2005) (state statute that imposed restrictions on certain ranching practices did not place unconstitutional burden on interstate commerce where there was no plausible evidence that interstate burden would be more than incidental and burden was therefore not excessive); *Pac. Nw. Venison Producers*, 20 F.3d at 1015 (finding that because no evidence was offered to support a finding of more than minimal economic impact on interstate commerce and foreign commerce, there was no excessive burden).

**2. California has a substantial interest in Prop 12.**

Because Plaintiffs fail to meet their burden of showing a substantial burden on interstate commerce imposed by Prop 12, this Court need not examine the in-state benefits of the initative. *Pharm. Research*, 768 F.3d at 1044 (citing *Ass'n des*

---

importantly, Plaintiffs clearly contemplate the possibility of segregated products for Prop 12-compliant and non-compliant marketplaces.

*Eleveurs*, 729 F.3d at 951-52). Nevertheless, Plaintiffs also fail to show that the benefits of Prop 12 are illusory. *Id.* Plaintiffs pack their complaint with allegations that call into question the animal welfare and public health and safety purposes of Prop 12. But although Plaintiffs may disagree with the reasoning of both the drafters of Prop 12 and the voters who enacted it, the law's clearly stated purpose is "to prevent animal cruelty" and the language of the statute provides the best insight into the law's purpose. *See Clover Leaf*, 449 U.S. at 463 n.7 ("[We] will assume that the objectives articulated by the legislature are [the] actual purposes of the statute, unless an examination of the circumstances forces us to conclude that they could not have been a goal of the legislation") (internal quotation marks and citation omitted); *Pa. Soc'y for the Prevention of Cruelty to Animals v. Bravo Ent., Inc.*, 237 A.2d 342, 360 (Pa. 1968) ("A legislative proscription, such as that found in the cruelty to animals statute, is declarative of the public policy and is tantamount to calling proscribed matter *prejudicial to the interests of the public*." (Emphasis added)). Simply put, California has already made a specific policy judgment about where the public interest lies, and thus there is no need or justification for the Court to second-guess that judgment or become an arbiter of the science of animal welfare.

Courts have routinely recognized that that preventing animal cruelty—on its own—is a legitimate exercise of state police powers. *Ass'n des Eleveurs,* 729 F.3d at 952-53. By regulating conduct in California that affects the welfare of animals, Prop 12 serves a legitimate state purpose. *See DeHart v. Town of Austin, Ind.*, 39 F.3d 718, 722 (7th Cir. 1994) ("regulation of animals has long been recognized as part of the historic police power of the States," as part of the States' "authority to provide for the public, health, safety, and morals"); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 538 (2003) (recognizing the "legitimate governmental interests in . . . preventing cruelty to animals"). As the Ninth Circuit made clear in *Association des Eleveurs*, 729 F.3d at 952, "Plaintiffs

give us no reason to doubt that the State believed that the sales ban in California may discourage the consumption of products produced by force feeding birds and prevent complicity in a practice that it deemed cruel to animals." In other words, the State has a legitimate interest in preventing the products of cruelty from entering its market. *Id.*; *see also Chinatown Neighborhood Ass'n v. Brown*, 2013 WL 60919, at *7 (N.D. Cal. Jan. 2, 2013), *aff'd*, 539 F.App'x 761 (9th Cir. 2013) (shark fin law restricting sale of shark fins in California was "intended to protect and conserve sharks and the marine ecosystems dependent on them by means of regulating local *market* conditions, which laws targeting the actual practice of shark finning in domestic waters alone do not address") (emphasis in the original); *see Cresenzi Bird Importers, Inc. v. State of New York*, 658 F. Supp. 1441, 1447 (S.D. N.Y. 1987)*, affirmed sub. nom.* 831 F.2d 410 (2d Cir. 1987) ("New York has a legitimate interest in regulating its local market conditions which lead, in a short causal chain, to the unjustifiable and senseless suffering and death of thousands of captured wild birds . . . The State has an interest in cleansing its markets of commerce which the Legislature finds to be unethical.").

Enacting laws that codify and enforce moral values is a function inherent to state governments, whose traditional police power "is defined as the authority to provide for the public health, safety, and morals." *Barnes v. Glen Theatre*, 501 U.S. 560, 569 (1991); *see also Cotta v. City and Cty. of San Francisco*, 157 Cal. App. 4th 1550, 1557 (2007) (California legislature has authority to pass laws "in furtherance of public peace, safety, morals, health and welfare"); *United States v. Stevens,* 559 U.S. 460, 469 (2010) ("[T]he prohibition of animal cruelty itself has a long history in American law, starting with the early settlement of the Colonies."). Thus, the manner in which a society treats animals is an issue of profound moral importance and well within California's police power to regulate. The local benefits of Prop 12 are real, significant, and legitimate.

Indeed, California—like all states in the country— has a long history of excluding from the local marketplace products that violate the State's ethical norms. Examples include dog and cat pelts, Cal. Penal Code § 598a; the meat of any animal commonly kept as a household pet, *id.* at § 598b; horsemeat, *id.* at § 598d; exotic animals or their body parts, *id.* at § 630o; shark fin products, Cal. Fish & Game Code §§ 2021, 2021.5; and liver from force-fed birds, Cal. Health & Safety Code § 25982. Banning sales of animal products created through cruel practices is perfectly consistent with the State's authority to protect moral values. *Ass'n des Eleveurs*, 729 F.3d at 952-53; *Chinatown Neighborhood*, 2013 WL at *7.

**CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiffs' complaint with prejudice.

Dated: January 10, 2020

RILEY SAFER HOLMES & CANCILA LLP

*/s/ Bruce A. Wagman*

Bruce A. Wagman (CSB No. 159987)
BWagman@rshc-law.com
RILEY SAFER HOLMES & CANCILA LLP

*Counsel for Defendant-Intervenors*