HOLLAND & KNIGHT LLP
Vito Costanzo (SBN: 132754)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel.: 213.896.2400
Fax: 213.896.2450
E-mail: Vito.Costanzo@hklaw.com

HOLLAND & KNIGHT LLP
Alex N. Hadduck (SBN: 312962)
2300 U.S. Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Tel.: 503.517.2958
Fax: 503.241.8014
E-mail: Alex.Hadduck@hklaw.com

*Attorneys for Amici Curiae States of Indiana et al.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL PORK PRODUCERS COUNCIL & AMERICAN FARM BUREAU FEDERATION;<br><br>Plaintiffs,<br><br>vs.<br><br>KAREN ROSS, in her official capacity as Secretary of the California Department of Food & Agriculture, et al.,<br><br>Defendants,<br><br>THE HUMANE SOCIETY OF THE UNITED STATES, et al.,<br><br>Defendants-Intervenors. | Case No.: 3:19-cv-02324-W-AHG<br><br>**AMICUS BRIEF OF STATES OF INDIANA, ALABAMA, ARKANSAS, IOWA, KANSAS, LOUISIANA, MISSOURI, NEBRASKA, OHIO, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, AND WEST VIRGINIA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND DEFENDANT-INTERVENORS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>The Honorable Thomas J. Whelan<br>Date: March 23, 2020<br>Location: Courtroom 3C |

## INTRODUCTION AND INTEREST OF *AMICI* STATES

The States of Indiana, Alabama, Arkansas, Iowa, Kansas, Louisiana, Missouri, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, and West Virginia hereby file an amicus brief in support of Plaintiffs' opposition to Defendants' motion to dismiss and Defendant-Intervenors' motion for judgment on the pleadings.

California's Proposition 12, enacted by voters in November 2018, contains two operative provisions. The first exercises California's authority over farming in the State by regulating the manner in which *California* farmers may confine (1) calves raised for veal, (2) breeding pigs, and (3) egg-laying hens. Cal. Health & Safety Code § 25990(a). The second provision, however, unconstitutionally purports to extend California's animal-confinement regulations to *every* farmer in the United States: It prohibits the sale of any veal, pork, or eggs produced from animals not raised in accordance with California's animal-confinement regulations, regardless of where those animals were raised. *Id.* § 25990(b).

*Amici* States file this brief to explain that the Commerce Clause prohibits California's attempt to usurp other States' authority to set their own animal-husbandry policies. California's regulations are a substantial departure from current practices in most States, including *Amici* States; the Commerce Clause does not permit California to upset those practices by setting a single, nationwide animal-confinement policy.

Furthermore, some of the *Amici* States, including Indiana, operate farms that sell meat on the open market. Purdue University, a body corporate and politic and an arm of the State of Indiana, raises swine and sells them into the national supply chain, likely reaching California customers. As such, the State of Indiana is likely to be directly affected by Proposition 12.

Because *Amici* States have a sovereign interest in preserving their authority to set policy for their own farmers and state entities, they file this brief to explain why the court should deny Defendants' motion to dismiss and Defendant-Intervenors' motion for judgment on the pleadings and allow the case to proceed to the merits.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

## SUMMARY OF ARGUMENT

The Supreme Court has long held that the Commerce Clause "prohibits state laws that unduly restrict interstate commerce" in order to "preserve[] a national market for goods and services." *Tenn. Wine & Spirits Retailers Ass'n. v. Thomas*, 139 S. Ct. 2449, 2459 (2019). As the Court recently observed, this negative implication of the Commerce Clause reflects a "central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization" present at the time. *Id.* at 2461 (internal quotations omitted). The Framers' central concern, in other words, was to prevent the interstate trade barriers—and corresponding interstate friction—that the Articles of Confederation had allowed. *See Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979). "The entire Constitution was 'framed upon the theory that the peoples of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 n.12 (1989) (quoting *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 523 (1935)).

The interstate trade barriers prohibited by the Commerce Clause include state regulations imposed on commerce that takes place in *other* States. This prohibition on extraterritorial regulation "reflect[s] the Constitution's special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres." *Id.* at 335–36.

And because California's Proposition 12 regulates extraterritorially, it violates the Commerce Clause. Proposition 12 commands farmers around the country to raise their veal calves, hogs, and hens in accordance with California's animal-confinement standards—or else be forced out of the California market altogether. It thereby attempts to regulate animal husbandry practices nationwide, interfering with other States' sovereign interests in regulating agriculture within their borders as they see fit.

Such single-state conform-or-forego coercion is precisely the type of interstate trade friction that the Commerce Clause was designed to prevent. California may serve as a laboratory of policy experimentation with its animal confinement laws; but it cannot impose its laws on extraterritorial conduct and thereby prevent other States from experimenting with their own animal-confinement policies.

Proposition 12 regulates extraterritorially in violation of the Commerce Clause. It threatens to promote economic balkanization and contribute to the growing economic friction between States. This Court should therefore deny Defendants' motion to dismiss and Defendant-Intervenors' motion for judgment on the pleadings.

## ARGUMENT

Because the Commerce Clause vests Congress with the exclusive power to regulate interstate commerce, *La. Pub. Serv. Comm'n v. Tex. & N.O.R. Co.*, 284 U.S. 125, 130 (1931), it correspondingly limits the power of States "to erect barriers against interstate trade," *Maine v. Taylor*, 477 U.S. 131, 137 (1986). Indeed, the Framers' central objective in adopting the Commerce Clause was to prevent the friction between States caused by the interstate trade barriers that had been prevalent under the Articles of Confederation. *See Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979). And the interstate trade barriers prohibited by the Commerce Clause include state regulations imposed on commerce occurring in *other* States: This prohibition on extraterritorial regulation "reflect[s] the Constitution's special concern both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres." *Id.* at 335–36. Because Proposition 12 violates this prohibition, it is unconstitutional. This Court should reject Defendants' and Defendant-Intervenors' arguments contending otherwise.

## I. Proposition 12's Sales Ban Regulates Extraterritorially by Imposing California's Policies on Wholly Out-of-State Commerce

In applying the Commerce Clause's prohibition on extraterritorial regulation, the Supreme Court has explained that a state legislature's power to enact laws is similar to a state court's jurisdiction to hear cases—"[i]n either case, any attempt directly to assert extraterritorial juris-diction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 n.13 (1989) (internal quotation marks and citation omitted). The Commerce Clause thus precludes "the application of a state statute to commerce that takes places wholly outside of the State's borders, whether or not the commerce has effects within the State." *Id.* at 336. In other words, a "state law that has the practical effect of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Id.* at 332 (citation and internal quotation marks omitted).

The Commerce Clause's prohibition on extraterritorial regulation applies "regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.* at 336. Determining whether a state regulation constitutes prohibited extraterritorial regulation thus requires consideration of the statutory text as well as the law's "practical effect," including "the consequences of the statute itself" and how that statute may "interact with the legitimate regulatory regimes of other States." *Id.*; *see also Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 582–83 (1986) (holding that a State "may not project its legislation into [other states]" (internal quotation omitted)). Indeed, even a regulation that does not explicitly regulate interstate conduct may do so "nonetheless by its practical effect and design." *C & A Carbone v. Town of Clarkstown*, 511 U.S. 383, 394 (1994).

Accordingly, the Ninth Circuit has specifically held that California cannot use a ban on in-state sales as a method to regulate upstream, out-of-state commercial practices that the State deems objectionable. In *Daniels Sharpsmart, Inc. v. Smith*, 889

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

F.3d 608 (9th Cir. 2018), the Ninth Circuit, citing *Healy*, explained that the "critical inquiry" is "whether the practical effect of the regulation is to control conduct beyond the boundaries of the state," *id.* at 614, and then enjoined California from penalizing export of medical waste for destruction as an "attempt[] to regulate waste treatment everywhere in the country," *id.* at 616. Similarly, in *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1322 (9th Cir. 2015) (*en banc*), the Ninth Circuit held that the Commerce Clause does not permit California to regulate the terms and conditions of out-of-state art sales merely because the seller resided in California.

Defendant-Intervenors ignore this precedent in their motion, ECF 19, and Defendants incorrectly assert that these cases do not apply because Proposition 12 "addresses only the market within the state," ECF 18-1 at 8. But Proposition 12's sales ban is entirely concerned with regulating animal husbandry in *other* States and imposes detailed requirements on out-of-state farmers' animal-confinement practices. *See, e.g.,* Cal. Health & Safety Code § 25991(e)(2) (defining "Confined in a cruel manner" to include confining veal calves after December 31, 2019 in a facility "with less than 43 square feet of usable floorspace per calf").

The only potential connection Proposition 12 has to California is its hook to in-state sales, but *Daniels Sharpsmart* holds that States cannot evade the Commerce Clause's limits on extraterritorial regulation by tying regulation of out-of-state commerce to in-state conduct: There, the Ninth Circuit held that California could not use the in-state operations of a medical waste treatment company to justify regulation of the company's out-of-state waste disposal. *See* 889 F.3d at 616 (noting that California "officials sought to punish [the company] for disposing of medical waste in a manner that was perfectly legal in the states in which [the company] had effectuated disposal"). As in *Daniels Sharpsmart*, here "[t]here is nothing to indicate that the [out-of-state] transactions had any effect whatsoever in California." *Id.* California is simply attempting to use in-state sales as a means of regulating animal-confinement practices in every other State, just as it "attempted to regulate waste

treatment everywhere in the country" in *Daniels Sharpsmart* and "tried to regulate art sales" in *Christies*. *Id.* The Commerce Clause precluded such extraterritorial regulation in those cases, and it precludes the regulation at issue here as well.

Furthermore, even if some Ninth Circuit decisions are in tension with *Daniels Sharpsmart* and *Christies, see Rocky Mountain Famers Union v. Corey*, 730 F.3d 1070, 1102 (9th Cir. 2013), *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 951 (9th Cir. 2013); *American Fuel & Petrochemical Manufacturers v. O'Keeffe*, 903 F.3d. 903, 916–17 (9th Cir. 2018), the rule announced by *Daniels Sharpsmart* and *Christies*—that a state may not regulate production in other states except to protect the health and safety of its citizens—vindicates the original purpose of the Commerce Clause and aligns with the approach taken by other Circuits. The Eighth Circuit, for example, has invalidated a Minnesota statute regulating the production of power imported into the State, emphasizing that the Supreme Court has never limited the holding of the extraterritoriality doctrine to price-control and price-affirmation laws. *North Dakota v. Heydinger*, 825 F.3d 912, 920–22 (8th Cir. 2016). The Seventh Circuit has similarly held that *Healy* is not limited to price-affirmation statutes, in the process invalidating a Wisconsin law barring out-of-staters from depositing waste in Wisconsin landfills unless the waste was generated in a community with an "effective recycling program." *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 659 (7th Cir. 1995); *see also Legato Vapors, LLC v. Cook*, 847 F.3d 825, 831 (7th Cir. 2017) (emphasizing that *Healy* stands for the "more general principle that a state may not impose its laws on commerce in and between other states"). And the Sixth Circuit has invalidated a law requiring beverage companies to stamp bottles sold in Michigan with a mark unique to such "only in Michigan" bottles on the ground that the law had an "impermissible extraterritorial effect" because it controlled "conduct beyond the State of Michigan." *Am. Bev. Ass'n v. Snyder*, 735 F.3d 362, 375–76 (6th Cir. 2013). *See also Ass'n for Accessible Meds. v. Frosh*, 887 F.3d 664, 669 (4th Cir. 2018) (emphasizing that the Supreme Court has never held

that the extraterritoriality doctrine applies exclusively to price-control or price-affirmation statutes).

Under these precedents, as under *Christies* and *Daniels Sharpsmart*, the only question is whether a State's sales prohibition does in fact regulate out-of-state conduct. And, contrary to Defendants and Defendant-Intervenors, Proposition 12 does so: Its "practical effect," *Healy*, 491 U.S. at 336, is to regulate transactions regarding the production and sale of pork, veal, and eggs that take place entirely outside California. Indiana, for example, is the fifth largest pork producer in the United States. State Rankings by Hogs and Pigs Inventory (June 14, 2018) https://www.pork.org/facts/stats/structure-and-productivity/state-rankings-by-hogs-and-pigs-inventory/. The agricultural supply chain leading from Indiana and other States to California requires multiple transactions occurring wholly in other States—such as farm procurement and production, sale to distributors, and slaughter and packing (followed by sale to California retailers and ultimately consumers). Proposition 12 requires farmers in other States to comply with California's regulations if their veal, pork, or eggs are re-sold in California. That requirement violates the Commerce Clause.

What is more, sometimes the out-of-state transactions California seeks to regulate are undertaken by States themselves. For example, Purdue University—an instrumentality of the State of Indiana—owns and operates farms through the Animal Sciences Research and Education Center that confine animals, including swine and poultry, in conditions that do not comply with Proposition 12. Purdue then sells livestock to distributors (including Tyson Foods), who in turn sell to retail customers nationwide. *See generally* Brian Ford, Purdue College of Agriculture, *Swine Unit*, https://ag.purdue.edu/ansc/ASREC/Pages/SwineUnit.aspx. Purdue's commercial transactions with those wholesalers occur wholly outside California; but, unless the wholesalers forego the California market altogether, may nonetheless be regulated by Proposition 12. That same model of interstate regulation will be replicated over and over as to private and public farms in Indiana and other States. Proposition 12 thus

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

8
AMICUS BRIEF ISO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS AND DEFENDANT-INTERVENORS' MOT. FOR JUDGMENT ON PLEADINGS

requires other States' farmers either to overhaul their manner of pork production to comply with California's regulations or lose access to the enormous California market.

Far from being predicated on assumption and speculation, *see* Motion for Judgment on the Pleadings, ECF 19 at 7, the extraterritorial effect of Proposition 12's sales ban follows from market reality—and indeed is its very objective. Proposition 12's sales ban will require farmers in other States to adjust their animal-husbandry practices as the price of maintaining access to California's market and will thereby undermine other States' policies of non-regulation in this area. Because it regulates wholly out-of-state transactions, Proposition 12's sales ban is an archetypal trade restriction that violates the Commerce Clause. This Court should not dismiss the Plaintiffs' claim asserting as much.

## II. Proposition 12's Sales Ban Threatens State Sovereignty

The Court should not grant Defendants' motion to dismiss and Defendant-Intervenors' motion for judgment on the pleadings, because doing so would threaten other States' decisions *not* to impose burdensome animal-confinement requirements on their farmers—a choice just as legitimate as California's.

In *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018), the Ninth Circuit correctly recognized that a State cannot insulate a statute from the extraterritoriality doctrine by purporting to regulate solely in-state activity—such as in-state medical waste generation or in-state sales—when that regulation has the direct effect of regulating conduct that takes place wholly outside of the State. And rightly so: If courts allowed States to evade the extraterritoriality doctrine by attaching production regulations to in-state sales, States could adopt numerous mutually contradictory statutes. The inevitable result would render interstate commerce effectively impossible. This is not what the Founders intended. This Court has the opportunity to vindicate the Founders' design and reign in the emerging Balkanization of the American agricultural market. It should deny the Defendants' motion to dismiss

and Defendant-Intervenors' motion for judgment on the pleadings and ultimately declare Proposition 12's sales ban an unconstitutional extraterritorial regulation.

Proposition 12 threatens to interfere with "the legitimate regulatory regimes of other states," *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989), and threatens to subject farmers across the country to conflicting requirements. Rather than impose specific animal-confinement requirements, the vast majority of States have chosen to permit farmers to raise calves, hogs, and hens in accordance with commercial standards and agricultural best practices. *See generally* Elizabeth R. Rumley, The National Agricultural Law Center, *States' Farm Animal Confinement Statutes*, https://nationalaglawcenter.org/state-compilations/farm-animal-welfare/. It is easy to imagine farmers getting caught in the crossfire as other States attempt to impose regulations that differ from California's—a problem that will only get worse as other States attempt to impose extraterritorial regulations of their own.

Nor is the concern for conflicting laws and balkanization speculative. Massachusetts, Maine, Michigan, and Rhode Island have enacted animal-confinement laws similar to California's current rules—rules that require out-of-state farmers to refrain from "confining a covered animal in a manner that prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely." Cal. Health & Safety Code § 25991(e)(1)); *see* Mass. Gen. Laws ch. S51A, §§ 1–5; Me. Rev. Stat. tit. 7, § 4020(2); Mich. Comp. Laws §287.746(2); 4 R.I. Gen. Laws. § 4-1.1-3. Now that these States have enacted sales bans on agricultural products that do not comply with their animal-confinement rules, other States may soon follow suit.

Nor is the trend of individual States effectively usurping other States' sovereign police powers limited to agricultural production methods. Minnesota, for example, enacted a statute prohibiting the importation of power from outside the State that is generated in a manner that would increase the State's power-sector carbon-dioxide emissions. *North Dakota v. Heydinger*, 825 F.3d 912, 920 (8th Cir. 2016). The Eighth Circuit affirmed an injunction against this statute, holding that Minnesota's law

regulated "activity and transactions taking place wholly outside of Minnesota" in violation of the Commerce Clause. *Id.* at 921. Similarly, some States and localities have also sought to use the common law of public nuisance and trespass to regulate energy production occurring wholly in other States. *See California v. B.P. et al.*, 3:17-cv-6011 (N.D. Cal.); *King County v. B.P. et al.*, 2:18-cv-758 (W.D. Wash.); and *City of New York v. B.P. et al.*, 18-cv-182 (S.D.N.Y.).

These efforts portend exactly the sorts of economic friction and trade wars the Commerce Clause was designed to prevent. It is not hard to imagine, for example, a State obstructing access to its markets for goods produced by labor paid less than $15 per hour—the hypothetical "satisfactory wage scale" dismissed as absurd in *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 524 (1935). Nor is it difficult to see how other States might retaliate to such extraterritorial minimum-wage laws with their own bans—such as a ban on goods produced by labor lacking right-to-work protections. The Commerce Clause was adopted to head off precisely this sort of escalating interstate conflict.

Justice Brandeis, dissenting in *New State Ice Co. v. Liebmann*, acknowledged that "it is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments *without risk to the rest of the country*." 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting) (emphasis added). But here, as in other so many other instances arising throughout the Nation, one State's policy experimentation *does* pose risks for the rest of the country, particularly for States who have made the legitimate decision not to regulate animal confinement as California has. This Court should not allow California to supersede other States' sovereign policy choices.

# CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss and Defendant-Intervenors' motion for judgment on the pleadings.

Dated: March 6, 2020                          HOLLAND & KNIGHT LLP

By:     */s/ Alex N. Hadduck*
Vito Costanzo (SBN: 132754)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel.: 213.896.2400
Fax: 213.896.2450
E-mail: Vito.Costanzo@hklaw.com

Alex N. Hadduck (SBN: 312962)
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone No.: 503-243-2300
Facsimile No.: 503-241-8014
E-mail: Alex.Hadduck@hklaw.com

*Attorneys for Amici Curiae
States of Indiana et al.*

# ADDITIONAL COUNSEL
*Counsel for Amici States*

| | |
|---|---|
| STEVE MARSHALL<br>Attorney General<br>State of Alabama | DAVE YOST<br>Attorney General<br>State of Ohio |
| LESLIE RUTLEDGE<br>Attorney General<br>State of Arkansas | MIKE HUNTER<br>Attorney General<br>State of Oklahoma |
| CURTIS T. HILL, JR.<br>Attorney General<br>State of Indiana | ALAN WILSON<br>Attorney General<br>State of South Carolina |
| TOM MILLER<br>Attorney General<br>State of Iowa | JASON RAVNSBORG<br>Attorney General<br>State of South Dakota |
| DEREK SCHMIDT<br>Attorney General<br>State of Kansas | KEN PAXTON<br>Attorney General<br>State of Texas |
| JEFF LANDRY<br>Attorney General<br>State of Louisiana | SEAN D. REYES<br>Attorney General<br>State of Utah |
| ERIC SCHMITT<br>Attorney General<br>State of Missouri | PATRICK MORRISEY<br>Attorney General<br>State of West Virginia |
| DOUG PETERSON<br>Attorney General<br>State of Nebraska | |